FOURNET, Justice
 

 (dissenting).
 

 The plaintiff and the defendants having entered into a pooling or unitizing agreement under the provisions of Section 9 (a) of Act No. 157 of 1940, after the issuance of and in conformity with an order of the Department of Conservation fixing and establishing the drilling unit in the Logansport Gas Field (the field in which plaintiff’s property is situated) at 320 acres (as authorized by the said act), are bound by the agreement and the defendants cannot avoid the effect of such a contract. The subsequent action of the Commissioner ■of Conservation in changing this unit from the 320 acres thus established to 640 acres was, in my opinion, unauthorized by the .act, and, therefore, without effect.
 

 ' In any event, the Commissioner’s action in thus changing the drilling unit cannot have the effect of abrogating the contract. If the Commissioner has the right to ■change the drilling unit, as was done in this case, then, and only after the plaintiff ■either fails or refuses to agree to unitize his interest in accordance with such order .and a hearing has been had as provided in Section 9 of the act, can the Commissioner issue an order forcing the pooling ■of plaintiff’s interest.
 

 The powers delegated to the Commissioner in this act are very specific. ■ One of them is that he may fix “the maximum area that can be efficiently and economically drained by one well.” That the Commissioner did just that in fixing the unit at 320 acres in this field is shown by the statement in the case of Hunter Co. v. McHugh, 202 La. 97, 11 So.2d 495, 497, that the order establishing this unit was only issued after “The most thorough investigation that science afforded was had for the purpose of establishing a correct drilling unit,
 
 by determining the maximum area which might be drained efficiently and economically by one well,
 
 as required by Section 8(b) of the statute.” (Italics mine.)
 

 To hold otherwise, in my opinion, gives the Commissioner such power as enables him to change these orders, true under the formality of a hearing, at his will, thus tending to create confusion and uncertainty as to valuable property rights. What good could such a hearing be after there has already been
 
 “The most thorough investigation that science afforded
 
 * * '*
 
 for the purpose of establishing a correct drilling umit”
 
 if such a unit can be changed by the simple procedure of calling another hearing. Either the statement from the Hunter case is not correct or the evidence adduced at the second hearing is of the type that is not entitled to much credence by the Commissioner. (Italics mine.)
 

 In other words, if the holding in the majority opinion is allowed to stand, the property rights of small property owners can, to all effect and purpose, be confiscated or else rendered valueless, for such, a property owner, not being able to maintain at
 
 *381
 
 yearly salaries the geologists and experts at the command of the state and the large companies, is unable to produce expensive scientists and experts as witnesses at, or bear other expenses incidental to, such hearings indefinitely.
 

 It is my opinion, therefore, that the judgment of the lower court should be affirmed.